**GREENBAUM OLBRANTZ LLP**
Carter E. Greenbaum (SBN 344692)
160 Newport Center Drive, Suite 110
Newport Beach, CA 92660
(332) 222-9119
carter@greenbaumolbrantz.com

**GREENBAUM OLBRANTZ LLP**
Casey Olbrantz (*pro hac vice forthcoming*)
Giorgio Traini (*pro hac vice forthcoming*)
244 Fifth Avenue, Suite C221
New York, NY 10001
casey@greenbaumolbrantz.com
giorgio@greenbaumolbrantz.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

|  |  |
|---|---|
| **David Gardner**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>— *against* —<br><br>**Fenix International Ltd. (d/b/a OnlyFans)**,<br><br>Defendant**.** | Case No.  _____<br><br>**Class Action Complaint**<br><br>**Jury Trial Demanded** |

Plaintiff David Gardner, individually and on behalf of all others similarly situated, brings this action against Fenix International Ltd. (d/b/a OnlyFans) ("**OnlyFans**"), invokes this Court's jurisdiction under 28 U.S.C. § 1332(d)(2)(A), and alleges as follows:

### Introduction

1.      This class action challenges OnlyFans's bait-and-switch practice of selling monthly subscriptions by promising "full access" to exclusive creator content, despite knowing and failing to disclose that consumers will not receive such access without substantial additional payments.

2.      OnlyFans is the dominant global platform for performer-specific pornographic content. OnlyFans enlists individual performers to create content ("**Creators**"), and then sells access to that content to individual consumers ("**Fans**"). It boasts over 400 million Fans, and generates more than $7 billion in annual revenue. In exchange for monthly fees, Fans can buy subscriptions to Creators, which permits them to message with that Creator and obtain full access to that Creator's content. The latter representation is explicit: when any Fan attempts to buy a subscription to any Creator, OnlyFans expressly promises that the payment will provide "Full access to this user's content."

3.      But millions of Fans have bought subscriptions only to discover that, behind OnlyFans's paywalls, Creators' exclusive content remains inaccessible. That is because numerous Creators—including many of the most prominent Creators on the platform—systematically refrain from posting *any* exclusive content. Instead, with OnlyFans's facilitation, encouragement, and knowledge, Creators solely post "teasers" of exclusive content, and instead bombard Fans with automated "direct messages" soliciting purchases of their content for more money. Thus, the sole "benefit" of many subscriptions is the privilege of being spammed with offers to buy access to content that OnlyFans initially promised. In essence, OnlyFans promises a buffet, but provides only a menu.

4.      OnlyFans is responsible for this systemic bait-and-switch, which contradicts its core subscription promise to consumers. Despite its facilitation, encouragement, and knowledge of its Creators' behaviors and monetization strategies, OnlyFans uniformly promises a misleading product benefit to every Fan, and causes unwitting consumers to either pay additional fees to see the initially promised content, or forfeit the value of their subscription payments.

5.      OnlyFans's misleading subscription terms and false paywalls are illegal, deceptive, and unfair, and they deprive countless Fans of the benefits of their bargains. Plaintiff brings this class action to ameliorate and halt OnlyFans's misconduct.

**The Parties**

6.      Plaintiff is a resident of the Los Angeles area. In September 2025, while using X (f/k/a "Twitter"), he came across content that promoted the OnlyFans profiles of two Creators, who are identified in this Complaint as "Mila" and "Emilia." He understood from those Creators' publicly available biographies, information, and images that both Creators posted their exclusive adult content on their OnlyFans profiles. He was interested in subscribing to both profiles, each of which required a monthly subscription fee. Upon attempting to subscribe to both Creators on September 16, 2025, OnlyFans presented him with pop-up "checkout" boxes reflecting OnlyFans's subscription offers, wherein OnlyFans expressly promised that plaintiff would obtain "full access" to each Creator's exclusive content upon clicking an adjacent button to confirm payment of the specified monthly fees. He relied on OnlyFans's representation and proceeded to purchase monthly subscriptions to Mila's and Emilia's profiles. But upon paying the respective fees to OnlyFans and getting behind its paywalls, he discovered that neither Creator posted their "exclusive" content to their page. Rather, they only posted non-explicit and/or "teaser" content that served as inducements for him to direct message the Creators and pay more money to access their content. Moreover, upon subscribing, both Creators (or their third-party agents) repeatedly sent him automated, mass "direct" messages soliciting his additional purchases of their videos, which he declined. He felt his money was wasted, and did not renew either subscription. In the absence of OnlyFans's "full access" promise, he would not have subscribed to either profile in the first place, or at least would not have paid as much to do so. He would like to subscribe to different Creators in the future, but cannot rely on OnlyFans's representations in choosing whether to do so—the platform continues to present the same uniform promise in connection with every paid Creator profile—and he would face the risk of being deceived again in the absence of injunctive relief.

7.      Defendant Fenix International Limited is a private limited company registered in the United Kingdom. It lists its primary address as 9th Floor, 107 Cheapside, London, EC2V 6DN, but on information and belief, that address is a "mail drop" service, and the company operates remotely. OnlyFans has several non-defendant American subsidiaries, but OnlyFans has admitted that they do not operate independently, and serve discrete technical purposes exclusively at OnlyFans's direction.

## Jurisdiction and Venue

**8.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one class member is a citizen of a different state than OnlyFans, there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

**9.** Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this District is where a substantial part of the acts, omissions, and events giving rise to plaintiff's claims occurred.

**10.** The Court has personal jurisdiction over OnlyFans, which routinely and purposefully directs its activities to California, consummates transactions with California residents (including plaintiff), and performs acts by which it purposefully avails itself of the privilege of conducting activities in California, and thereby invokes the benefits and protections of its laws.

**11.** Since its inception, OnlyFans has systemically and particularly focused its business on California because of its unique status as a global capital of celebrity, entertainment, and influencer culture, and for the production of pornography. OnlyFans has long anticipated, desired, and achieved a substantial California user base, which is an integral component of its business model and its profitability. OnlyFans maintains continuous and systematic commercial relationships with California residents, contracts directly with California-based Creators and Fans, and processes millions of transactions with them every year. OnlyFans's platform and payment systems are expressly designed to reach users in California. (Its global privacy policy, for example, expressly includes provisions concerning California users.) OnlyFans specifically targets California audiences, including through its targeting and curation of California-based Creators, and other Creators, who individually solicit business on behalf of OnlyFans from California consumers, through advertisements and promotions on its digital and social marketing channels, and through sponsorships, partnerships, and promotional activities in California.

**12.** The claims asserted in this action arise directly from OnlyFans's California-directed activities. In operating its platform, OnlyFans exercises total control over how subscription pricing is presented, how contracts and transactions are entered and processed, and how content is distributed and promoted. OnlyFans knowingly implemented, facilitated, and profited from deceptive practices

that caused Fans in California to pay artificially inflated subscription fees, and/or caused them to subscribe to profiles that they otherwise would not have. The unfair and deceptive business practices alleged in this action were aimed at California residents, whom OnlyFans solicited and served through its Creators and its digital platform. OnlyFans knew, or should have known, that its conduct would cause financial harm to consumers located in California, where a substantial segment of its subscriber base resides and where the economic injury was suffered. Plaintiff and other California consumers accessed the OnlyFans platform in California, were induced by OnlyFans's marketing (including that of its Creators) and interface design to subscribe to Creator accounts, and paid subscription fees through California-based financial transactions. OnlyFans derived significant revenue from these transactions, calculated, processed, and remitted through payment intermediaries in California, thereby availing itself of the benefits and protections of California's marketplace. OnlyFans intentionally targeted California consumers, its alleged misconduct caused foreseeable harm in California, and California has a strong interest in protecting its residents from unfair and deceptive business practices.

13.    It is clear from the public record alone (and will be confirmed, if necessary, through jurisdictional discovery) that OnlyFans's contacts with California are far from "random, isolated, or fortuitous," but reflect OnlyFans's deliberate choice to do business in California and exploit its base of potential users for its own commercial gain. Specifically, OnlyFans's relevant California contacts include the following:

A.    OnlyFans enters millions of transactions and contracts annually with Fans and Creators who are based in California. Per OnlyFans's financial report for its fiscal year 2024, the United States accounted for approximately two-thirds of OnlyFans's global revenue, which was more than *triple* the revenue generated in the U.K. and Europe combined. Indeed, its previous CEO admitted that "everyone kind of assumes that [OnlyFans is] American," and that the company has "a very American personality." OnlyFans does not release state-specific U.S. data, but multiple analyses of public data indicate that California is far and away the most active U.S. state on OnlyFans, and may account for as

1    much as one-fifth of all U.S. Creator and/or Fan activity. Based on OnlyFans's

2    claim that it has over 4 million Creators and over 400 million Fans, on

3    information and belief, California is home to over 100,000 Creators, and over

4    ten million Fans like plaintiff, with whom OnlyFans routinely transacts and

5    enters contracts. On information and belief, OnlyFans generates several

6    hundred million dollars in gross annual revenue from these California contacts.

7    **B.**    OnlyFans deliberately tries to attract and retain California-based Creators.

8    California has long been a global capital for the production of pornography,

9    and it is thus a natural and obvious target for OnlyFans. For example, in the

10    late 2010s, OnlyFans partnered with Bill Fox, "a prominent figure in

11    California's porn industry," who "recruited dozens of" "A-list" adult

12    performers to join OnlyFans, and whom OnlyFans personnel thereafter referred

13    to as "Bill's Girls." Reuters, *OnlyFans Exposed* (Dec. 28, 2024),

14    https://www.reuters.com/investigates/special-report/onlyfans-sex-origins/.

15    After Mr. Fox passed away, OnlyFans hired a new Chief Marketing Officer—

16    who was based in and worked out of Los Angeles—to continue leading its

17    efforts to attract Creators.

18    **C.**    California is an obvious target for OnlyFans to recruit Creators for the

19    additional reason that it is a global capital for "influencing" culture. For

20    instance, a 2024 study analyzed the U.S.'s most prominent social media

21    influencers, and found that 31% lived in California, which *Newsweek* attributed

22    to "the cultural power of cities like Los Angeles and San Francisco, as well as

23    the presence of Hollywood and an existing celebrity infrastructure," while

24    citing another analysis which indicated that 2 million influencers live in

25    California overall.

26    **D.**    As OnlyFans explains on its website, and as its executives explain in public

27    statements, OnlyFans's success hinges on its Creators' visibility and following

28    on other social media platforms. Indeed, OnlyFans primarily markets itself as a

1  way for influencers who already have substantial followings on other platforms

2  to monetize their reach by converting those followers into paying subscribers

3  on OnlyFans. As its CEO has explained, "When we think about entering a new

4  market we don't look at boots on the ground. We look at social media usage."

5  **E.**    OnlyFans targets Californians to become Creators in several ways. In addition

6  to its direct and well-publicized targeting of "A-List" adult performers and

7  celebrities, on information and belief, OnlyFans routinely directly contacts

8  California-based individuals that it identifies as having substantial "follower"

9  counts on other social media platforms, fosters relationships with them, and

10  encourages them to join and/or remain on the platform. Indeed, on information

11  and belief, OnlyFans representatives have directly contacted plaintiff (who has

12  over 15,000 followers on YouTube) to encourage him to start an OnlyFans

13  Creator account. OnlyFans executives have publicly stated that they are in

14  direct contact with Creators "very regularly." On information and belief, and as

15  evidenced by OnlyFans's promotional content on its website and social media,

16  OnlyFans enters bespoke contracts with California individuals to become

17  Creators. On information and belief, OnlyFans also maintains direct working

18  relationships with California talent agencies, which often recruit Creators and

19  manage their profiles, and coordinate on matters like Creator retention,

20  marketing to Fans, and monetization.

21  **F.**    The fruits of OnlyFans's efforts to curate Creators in California are clear from

22  OnlyFans's own website. For instance, OnlyFans maintains a promotional page

23  titled "Creators on OnlyFans" that includes a grid listing hundreds of Creators

24  with whom OnlyFans appears to have entered direct partnerships (as opposed

25  to individuals who organically joined the platform by applying to become

26  Creators). OnlyFans provides biographies and links for each such Creator, as

27  well as a geographic identifier, and Los Angeles is far and away the most

28

CLASS ACTION COMPLAINT

1    popular location with approximately 100 Creators—about twice as many as the

2    next most common locations like New York and London.

3    **G.**    OnlyFans admits it has a "principal-agent relationship" with all of its Creators,

4    and, at least for jurisdictional purposes, Creators' contacts with California Fans

5    are imputed to OnlyFans. Although OnlyFans designates all of its California-

6    based Creators as independent contractors (and sends them form 1099s),

7    OnlyFans publicly and routinely describes Creators as its "partners" and

8    "spokespeople." Creators are OnlyFans's sole source of revenue, and the

9    company says that it "only succeeds when creators succeed." OnlyFans claims

10   that it does not advertise to consumers, and thus relies on Creators for all

11   advertising and generation of Fan transactions. OnlyFans also wields total

12   control over Creators and their use of the platform. It tightly controls who may

13   become a Creator, and imposes a robust application process through which it

14   reportedly rejects a strong majority of applications. For instance, it routinely

15   rejects Creator applications where the applicant has an insufficient presence on

16   other social media platforms. Upon acceptance, OnlyFans tightly monitors and

17   controls all content that Creators post—including by purportedly undertaking

18   human review of *every* post—and has discretion to summarily remove content.

19   It also maintains total discretion to, among other things, delete Creator

20   accounts, and unwind Fan transactions or withhold Creator earnings due to the

21   quality or nature of a Creator's content. For instance, OnlyFans routinely

22   deletes posts that have "vaping" in them, and summarily kicked a popular

23   Creator, Bonnie Blue, off of the platform in 2025 because it deemed that her

24   pornographic content was "too extreme."

25   **H.**    Through OnlyFans's targeting and recruitment of California-based Creators,

26   OnlyFans especially targets California-based Fans like plaintiff. Empirical

27   research on social media usage consistently finds that users are more likely to

28   follow and engage with geographically proximate users than with distant ones.

Indeed, plaintiff subscribed to Emilia after encountering her "teaser" content on Twitter, and he recalls that she identified herself as being based in California. The primary way that OnlyFans instructs Creators to promote themselves is through integrating their profiles with links to California-based social media providers, including Instagram, YouTube, Reddit, and Twitter, and promoting their OnlyFans profiles on those platforms. On information and belief, OnlyFans directly collaborates with those platforms and/or enters agreements with them to facilitate Creators' social media integrations and help them drive Fans to the platform. Those platforms also reportedly have abnormally high use and prominence in California, and causes California-based consumers to be a prime target for *all* OnlyFans Creators, rather than just California-based Creators.

I.   On information and belief, OnlyFans also enters bespoke agreements with California-based companies and individuals to promote the platform and encourage California-based consumers like plaintiff to subscribe. As OnlyFans explained in its most recent annual report, it "has entered into significant content and sponsorship agreements in the combat sports, racing sports, music and lifestyle verticals," which "included physical assets, media content for the OnlyFans platform and original streaming content." It has similarly explained in past annual reports that it invests in fostering "partnerships" with "established Creators." As evidenced by OnlyFans's public statements, numerous such contracts were with California persons. For example, on information and belief, it has directly recruited and/or partnered with famous celebrities in the Los Angeles area, including Blac Chyna, Bella Thorne, and Iggy Azalea. It has apparently also entered sponsorship agreements with numerous California-based sports teams and athletes—for example, The American Racing Team, Josh Herrin, and Mikaela Mayer—who promote the

1   platform by becoming Creators, appearing on OnlyFans's social and

2   multimedia channels, and advertising themselves as "OnlyFans athletes."

3   **J.**   Similarly, OnlyFans also enters contracts with California-based comedians,

4   such as Whitney Cummings, to drive public awareness of the platform. In

5   connection with these partnerships, OnlyFans regularly hosts OnlyFans-

6   branded comedy and music events in California that target Fans and Creators.

7   **K.**   OnlyFans also uses its platform to promote and "suggest" that Fans subscribe

8   to certain Creator accounts, through which it routinely advertises high-profile

9   California-based Creators.

10   **L.**   Although OnlyFans leaves all "traditional" advertising to its Creators,

11   OnlyFans itself has a robust social media presence with millions of followers,

12   and it routinely uses its social media channels to promote California-based

13   Creators to potential Fans, and to promote its platform to potential California-

14   based Creators. On information and belief, OnlyFans operates certain of its

15   social media accounts from California. On information and belief, OnlyFans

16   also utilizes paid promotional features of social media platforms to promote

17   certain social media posts to California residents.

18   **M.**   On information and belief, OnlyFans has entered bespoke agreements with

19   banks and payment processing companies that are based in California—

20   specifically, Stripe, Visa, and PayPal—to ensure and/or improve its ability to

21   facilitate payments from California Fans. Notably, around 2021, OnlyFans

22   announced that it was banning pornography from its platform to placate banks

23   and payment processors who were concerned with legislative and regulatory

24   developments in the United States. It reversed that announcement shortly

25   thereafter, after reportedly securing undisclosed agreements with concerned

26   institutions, including, on information and belief, California-based financial

27   institutions and/or payment processors.

28

CLASS ACTION COMPLAINT

**N.**    OnlyFans produces many co-branded "television" shows, comedy shows, and related media in California, which feature California-based Creators and are intended to promote the OnlyFans platform to potential Fans.

**O.**    On information and belief, OnlyFans contracts with service providers in California, such as multimedia transmission, hosting, backup, and data storage providers, to improve the quality and accessibility of its platform in California.

**P.**    OnlyFans has a "partnership" with a California-based e-commerce platform, Spring, Inc., through which OnlyFans and individual Creators advertise, sell, and deliver merchandise to California residents. OnlyFans's integrations with Spring also enable Creators to "design custom products to sell directly to their fans through their profiles," thereby improving Fan experience and engagement.

**Q.**    On information and belief, based on news reports and LinkedIn posts, OnlyFans maintains a fully remote workforce, and regularly employs individuals and contractors in California (in addition to the hundreds of thousands of Creators located there). For example, OnlyFans' previous CEO, Amrapali "Ami" Gan (who was previously the company's chief marketing and communications officer), lived and worked in California throughout her tenure. OnlyFans's LinkedIn page identifies thousands of "associated members" located in the United States, including over 100 in California. On information and belief, a substantial number of those individuals are employees or contractors of OnlyFans involved in the daily operations of OnlyFans, and include management-level employees. Notably, over the past several years, OnlyFans's executive team has included several alumni of the law firm Orrick Herrington & Sutcliffe LLP, which is headquartered in San Francisco.

**R.**    On information and belief, OnlyFans also collaborates and/or enters licensing agreements with California-based media companies to cross-promote the platform to Fans. For example, Apple TV is debuting a series in 2026, titled

"Margo's Got Money Troubles," where the main character's OnlyFans account is a central plotline. Similarly, Hollywood superstar Sydney Sweeney's character on the hit HBO show "Euphoria" will reportedly have an OnlyFans account in an upcoming season.

S.      OnlyFans executives and management also routinely attend professional conferences in California, and host professional and promotional events there to boost the platform's profile and drive Creator and Fan signups.

## Factual Allegations

### I.      OnlyFans Grows to Dominate the Market for Premium Adult Content

14.      OnlyFans was founded in 2016 by Tim Stokely, who has been described as "the king of homemade porn." In 2018, he sold a controlling stake in the platform to Leonid Radvinsky, a Florida-based entrepreneur who had previously founded a successful pornographic webcam site. Unsurprisingly, the driving force behind OnlyFans and its adoption has always been pornography.

15.      The majority of Americans participate in the online pornography industry, which generates an estimated $50 billion in annual global revenues. Before OnlyFans rose to prominence, the internet porn industry was dominated by studio-produced content, which was routinely pirated and posted on free websites. Performers were left vulnerable to exploitive production companies and middlemen, and to mass circulation of their work without consent or compensation. OnlyFans disrupted the industry by enabling performers to sell self-produced content at scale, and by offering consumers a comparatively transparent, interactive, and ethical option to obtain premium content.

16.      OnlyFans rose to prominence during the pandemic, buoyed by celebrity endorsements and its promise of "direct" contact with Creators. It has grown explosively, and now claims to have over 400 million customers—more than Netflix, HBO, or Prime Video. It last reported annual gross revenue in excess of $7.2 billion, which it generated through over 4 million Creators. In November 2025, it claimed to have distributed over $25 billion to Creators since its founding.

17.      Although OnlyFans has small upstart competitors like "Fansly" and "Just for Fans," OnlyFans has captured a large portion of the market for premium pornographic content. It has successfully aggregated a critical mass of the world's most popular adult performers and influencers

1  and centralizes distribution of their content, aggressively polices piracy, and locks access behind

2  mandatory subscription and pay-per-view paywalls. As a result, consumers who seek lawful access to

3  premium performer-specific content have no option but to subscribe to OnlyFans.

4      **II.**    **How OnlyFans Works**

5      **18.**    Individuals can sign up to the platform, www.onlyfans.com, as Creators or Fans.

6  Creators build unique pages and post biographies, images, and videos. OnlyFans tightly controls who

7  may become Creators, and requires extensive identity and eligibility verifications. Among other

8  things, OnlyFans requires putative Creators to demonstrate that they have active and "non-private"

9  accounts on social media platforms like Instagram and Twitter. OnlyFans has represented that more

10 than half of applicants are rejected, but other sources report that OnlyFans rejects about two-thirds of

11 applications. Once Creators are approved, OnlyFans tightly monitors their content and activity, and

12 claims that every post is reviewed by humans with discretion to delete any content. As its former CEO

13 once put it: "Everything on OnlyFans, we see it, we're able to view it, moderate it, and make sure that

14 everyone is following our terms of service."

15     **19.**    Any adult can sign up to OnlyFans as a Fan. The Fan experience is visually similar to

16 popular social media platforms like Instagram or Facebook. When Fans log in to the platform, they

17 are directed to a "home" page that presents a dynamic feed of posts by Creators that the Fan has

18 subscribed to, as well as OnlyFans's "recommendations" of other Creators to consider following.

19 From the homepage, Fans can navigate to individual Creator profiles, and upon subscribing, the Fan

20 can view that Creator's content and directly message them.

21     **20.**    OnlyFans makes money by taking a 20 percent cut of all Fan payments. Specifically,

22 Fans directly pay OnlyFans for all transactions on the platform, and OnlyFans thereafter applies

23 credits to the relevant Creator's accounts, subject to its ability to withhold or claw-back Fan payments.

24 In short, the more Fans pay, the more OnlyFans profits.

25     **21.**    OnlyFans gives Creators three ways to monetize their content: (1) making "free" pages

26 that are accessible to any Fan, on which the Creator can post premium "locked" pay-per-view

27 ("**PPV**") content; (2) making "paid" pages that charge Fans a monthly subscription fee, but without

28 the option to post PPV content; and (3) selling videos to individual Fans through "direct messages"

CLASS ACTION COMPLAINT

1  ("**DM(s)**"). OnlyFans's public financial statements categorize these options as two revenue streams:

2  (i) "subscription-based payments," which it describes as "transactions where the group facilitates

3  Creators providing content to Fans for a period of time," and (ii) "non-subscription-based payments,"

4  which include "one-time transactions such as messaging and access to content, that the group

5  facilitates between the Fans and the Creators."

6      **22.**    Most Creators choose to charge monthly subscription fees, rather than post PPV

7  content, and Fans spend billions of dollars on subscriptions every year. For most of OnlyFans's

8  history, subscription fees comprised the majority of its revenue. However, in recent years, its "non-

9  subscription based revenue" has exploded and overtaken subscription fees—even though the majority

10  of Creators still charge subscription fees. On information and belief, that change is a result of

11  OnlyFans's deliberate modification of its platform and/or its instructions to Creators to prioritize

12  making DM-based sales, which OnlyFans has determined maximizes monetization.

13  **III.**    **OnlyFans Promises that Paying Subscribers Have "Full" Access to Content**

14      **23.**    When Fans sign up for a subscription, they enter a standalone contract with OnlyFans.

15  Terms of those contracts appear on a pop-up checkout box where OnlyFans explains that, in exchange

16  for the specified recurring subscription fee, Fans get "Full access to this user's content," can "Direct

17  message with this user," and can "Cancel your subscription at any time."

18      **24.**    When Fans like plaintiff accept OnlyFans's subscription offers and purchase Creator

19  subscriptions, they reasonably understand that it will grant them access to the Creator's "exclusive"

20  content. OnlyFans expressly warrants that payment grants "full access" to content, which OnlyFans

21  understands accords with standard practices and consumer expectations for subscription-based content

22  distribution services.

23      **25.**    Moreover, OnlyFans also structures its platform to imbue consumers with the

24  expectation that a paid subscription entails access to all of a Creator's exclusive content. Among other

25  things:

26          **A.**    OnlyFans has created a dichotomy between free and paid Creator profiles. A

27                  consumer who peruses the platform's free accounts will see some "teaser"

28                  content, and the Creator's "exclusive" content will be posted alongside the

1   teasers, but locked behind a PPV paywall. OnlyFans describes PPV content as

2   a free profile's "most exclusive content that [a Creator's] fans won't find

3   anywhere else." Fans understand that they must pay to unlock that content. But

4   OnlyFans does not allow PPV content to be posted on paid pages. Thus,

5   OnlyFans structurally causes consumers to expect that a paid subscription will

6   feature the type of exclusive PPV content that is "locked" on free profiles.

7   Indeed, OnlyFans's own instructions to Creators suggest that Creators make

8   both a free and "paid" profile so that, by "teasing some content on a free

9   profile, you can let your subscribers know that there's more to unlock when

10  they upgrade to your paid profile."

11  **B.**   OnlyFans implements UX (user experience) designs that advertise

12  subscriptions as *the* mechanism to obtain a Creator's exclusive content, and as

13  a comprehensive key to access. OnlyFans implements a binary gating model—

14  unsubscribed users are blocked from viewing any posted content, and can only

15  read a biography—so consumers reasonably infer that crossing the paywall

16  unlocks all exclusive content. OnlyFans encourages Creators to make alluring

17  public biographies that promote the benefits of buying a subscription, and it

18  instructs Creators to use other social media platforms to post "content that

19  draws potential subscribers into your world and entices them to subscribe."

20  **C.**   OnlyFans sells subscriptions as a single recurring price, not as a limited bundle

21  or partial-access product, reinforcing the reasonable understanding that the

22  subscription price is consideration for access to the Creator's exclusive content

23  generally, not a narrow subset.

24  **D.**   Consumers' reasonable understandings of the benefits of an OnlyFans

25  subscription payment are bolstered by the fact that the vast majority of content

26  hosted on the world's most popular pornography websites (*e.g.*, Pornhub,

27  xHamster, and XVideos) is totally free to access. Thus, for the average

28  consumer, the payment of any subscription fee to access adult content is

significant, and reasonably and intuitively does entail "full access." Moreover, while sites like Pornhub, xHamster, and XVideos each offer premium monthly membership options, each of those offerings is a straightforward subscription-for-access upgrade. Unlike OnlyFans, those platforms do offer clearly defined, immediate, and comprehensive access to premium content in exchange for subscription payments.

26.    Although OnlyFans permits subscription-only Creators to sell content through DMs, OnlyFans presents the DM feature to paid subscribers as a means of requesting and purchasing *individualized* or "custom" content from the Creator that goes beyond the content included with a subscription. OnlyFans affirmatively markets the ability to "direct message with this user" as a core benefit of subscribing (and reinforces that understanding by charging fees to message Creators who offer free subscriptions). Nothing in OnlyFans's subscription flow, interface, or disclosures suggests that the DM *feature* permits Creators to withhold ordinary or pre-existing "exclusive" content from their profiles and subvert the value of monthly subscription fees by instead distributing such content exclusively through mass, automated DMs to extract additional payments from subscribers.

27.    Ultimately, by expressly promising that a subscription provides "full access" to a Creator's content, and by designing its platform, pricing, and user interface to reinforce that promise, OnlyFans creates a uniform and reasonable consumer expectation that paying subscribers will in fact receive full access to the Creator's exclusive content, and that expectation is material to plaintiff's and Fans' purchase decisions.

## IV.    OnlyFans Systemically Withholds Content from Paying Subscribers

28.    OnlyFans's representations about the benefits of its paid subscriptions were false and misleading to plaintiff and to millions of other Fans. Rather, OnlyFans systemically and knowingly fails to provide "full access" to Creator content, and strips Fans of the benefits of their bargains.

29.    As OnlyFans is well aware, numerous subscription-only Creators—including many of the most famous Creators on the platform—intentionally refrain from posting their "exclusive" content. Instead, these Creators post content that merely "teases" and advertises their exclusive content. Often, Creators' behind-the-paywall content is the very same teaser content that they post

1   publicly on social media or other websites to advertise the benefits of buying a subscription. These

2   Creators' "actual" content is on the platform, but it can only be accessed through additional DM-based

3   purchases, which Creators generally solicit through endless streams of automated mass-solicitation

4   messages.

5       30.     For example, Sophie Rain, Skylar Mae, and Mia Khalifa are three of the most

6   prominent and profitable adult content performers on the planet. Each is an OnlyFans Creator who

7   charges a subscription fee to access their page. And each has attained extraordinary wealth through

8   OnlyFans. Sophie Rain, for instance, claimed on November 27, 2025 that she made ***$95 million*** on

9   the platform over the previous two years.

10      31.     As shown in the below screenshots, when a Fan seeks to buy a subscription to these

11  Creators' pages, OnlyFans expressly promises that the Fan will have "Full access to this user's

12  content":

13



24      32.     Consumers reasonably expect that proceeding with such transactions will grant access

25  to each Creator's exclusive adult content. But the pages contain none. Instead, virtually all posts

26  behind the paywalls serve as mere advertisements and inducements to send DMs to buy individual

27  videos for more money. For example:

28

CLASS ACTION COMPLAINT

A.  Although Sophie Rain's pre-paywall biography promises "FULLY NUDE CONTENT AVAILABLE!!!," there is none posted behind the paywall. Instead, her account relentlessly spams paying Fans with DMs that tease her "exclusive" content while offering to sell access to individual videos for additional sums that far exceed her subscription price.

B.  Skylar Mae posts only "teaser" content, and her pinned post (which is behind the paywall) explains that her "exclusive content" is actually sent "to you every day" through endless, automated DMs that solicit extra payments for access.

C.  Mia Khalifa was a world-famous adult film star for years before OnlyFans was founded. Her pre-paywall biography promises "new exclusive content every single day." But, behind the paywall, she only posts censored content and states that Fans can DM her to buy the real thing. Some of her recent posts advertise, for example, a "45 MINUTE VID" of "UNCENSORED GLASSES ON [CENSORED] OUT" for $100, and a 45-minute compilation of "selects" that she explains is "*not for the broke* 😳 [men]" and costs $150.

33.  This practice is rampant across the OnlyFans platform. Numerous other high-earning and high-visibility Creators, such as Belle Delphine, Maddie Baby, and Megan Barton-Hanson, do the same thing. But the practice is not limited to "blockbuster" Creators who make millions of dollars a year. Plaintiff, for example, encountered this practice with Creators who have fewer than 20,000 Fans. Thus, OnlyFans users of all experience levels have no reasonable way to know whether a Creator engages in this practice without first paying a subscription fee to OnlyFans for that specific Creator.

34.  One anonymous Creator detailed this practice in a Reddit discussion forum called "CreatorAdvice," and "begged" other Creators to employ it. The Creator stated that she used to have an OnlyFans profile that was accessible for a $50 subscription, on which she posted lengthy explicit videos. However, she said she: "noticed subs[cribers] on [her] page only ever [subscribed] and chatted, but NEVER made additional purchases," and realized they had no incentive to, as "[t]hey're getting HOURS of content [that was posted] on the wall for $50." She referred to her $50 monthly subscribers as "cheapskates," and explained that providing them with her exclusive content was a

"rookie mistake." She explained that she now makes "significantly more money" by changing her profile to have "progressing levels," such that: (i) her public biography is "safe for work," (ii) her paying subscribers can see only content that was "lewd," yet non-explicit or censored, and (iii) all of her "topless" to "super explicit vids" require progressively expensive individual payments, which she said she solicits largely by sending "scheduled mass message[s]."

35.　　OnlyFans is highly aware of this practice. On information and belief, OnlyFans intentionally built, modified, and/or maintained its platform to facilitate, encourage, and incentivize Creators to employ it. More broadly, Creators are OnlyFans's sole stream of revenue, and only a tiny proportion of Creators generate meaningful profits. Per one recent study, the top 0.1% of OnlyFans creators generate **76 percent** of the platform's total revenue. OnlyFans itself states that, over the life of the platform, only ~4500 Creators (out of over 4 million) have generated $1 million. On information and belief, OnlyFans closely monitors these accounts, maintains direct contact with such Creators or their agents, analyzes data about how they use the platform, studies how their content is distributed and monetized, and directly and indirectly collaborates with the Creators or their agents on how to maximize their monetization.

36.　　OnlyFans is responsible for promising "full access" to Creator profiles despite its knowledge, encouragement, and facilitation of the widespread proliferation of this practice. It exclusively controls the platform's design, functionality, content distribution capabilities, contract formation process, and payment architecture, and it sets the default adhesive subscription terms. At no time does OnlyFans inform consumers that the subscription payment may be insufficient to view the Creator's exclusive content. Rather, it uniformly represents to every Fan that they will obtain "full" content access upon paying a subscription fee, and then routinely fails to perform that promise.

37.　　The reason for OnlyFans' conduct is simple—OnlyFans understands that it has captured a market, has determined that PPV content is what maximizes its monetization, and has resolved to force its paying subscribers to participate in the PPV market, while also continuing to extract monthly fees that provide no meaningful value.

38.　　OnlyFans's practice eliminates any "benefit" of its monthly subscription fees. Subscribers to "free" and "paid" profiles alike must pay individual prices to access Creators' exclusive

content. No reasonable consumer would pay a monthly fee for the privilege of being spammed with automated solicitations to buy adult videos, but OnlyFans systematically and deceptively induces consumers like plaintiff to do just that.

39. OnlyFans has breached its promises to plaintiff and millions of Fans, who spent hundreds of millions of dollars in subscription payments that amounted to unlawful and deceptive junk fees. OnlyFans is liable for breach of contract and for violating California consumer protection law, its conduct should be enjoined, and plaintiff and Fans are entitled to substantial damages.

## Class Allegations

40. Plaintiff incorporates the above allegations as if fully set forth below.

41. This action is brought by plaintiff individually and on behalf of the classes, as defined below, pursuant to Rule 23(b)(3), 23(b)(2), and (c)(4) of the Federal Rules of Civil Procedure.

### Nationwide Class

All persons in the United States who purchased a subscription to a Creator on OnlyFans after being exposed to OnlyFans's representations that the subscription payment would provide "full access" to the Creator's content, but did not receive access to all content reasonably understood to be included with the subscription without additional payment.

### California Subclass

All persons in California who purchased a subscription to a Creator on OnlyFans after being exposed to OnlyFans's representations that the subscription payment would provide "full access" to the Creator's content, but did not receive access to all content reasonably understood to be included with the subscription without additional payment.

42. Excluded from the classes are OnlyFans and its subsidiaries, affiliates, officers, directors, and any entity in which OnlyFans has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members. Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

43. <u>Numerosity</u>: The members in the classes are so numerous that joinder of all class members in a single proceeding would be impracticable.  While the exact number of members of the

1    classes are unknown at this time and can only be determined by appropriate discovery, Plaintiff is

2    informed and believes that the classes are likely to include millions of individuals. Therefore, the

3    classes are sufficiently numerous that joinder of all members in a single action is impracticable under

4    Rule 23(a)(a), and the resolution of claims through the procedure of a class action will benefit the

5    parties and the Court.

6         **44.**    <u>Commonality, Predominance, and Superiority:</u> Common questions of law and fact

7    exist as to all class members and predominate over any potential questions affecting only individuals.

8    Such common questions of law or fact include, among other things, whether OnlyFans uniformly and

9    deceptively represents that Creator subscriptions provide "full access" to exclusive content, and

10    whether OnlyFans breaches its resultant contractual obligations when it fails to provide full access.

11    OnlyFans engaged in a common course of conduct giving rise to the legal rights sought to be enforced

12    by plaintiff individually and on behalf of all other class members. Individual questions, if any, pale in

13    comparison, in both quantity and quality, to the numerous common questions that dominate this

14    action, as the claims arise from standardized representations, uniform platform architecture, and

15    common subscription and payment mechanisms controlled by OnlyFans, such that liability and

16    damages can be proven with common evidence on a classwide basis. A class action is superior to any

17    other available means for the fair and efficient adjudication of this controversy, and no unusual

18    difficulties are likely to be encountered in the management of this class action.

19         **45.**    <u>Typicality:</u> Plaintiff's claims are typical of the claims of the class members. Plaintiff,

20    like all proposed members of the classes, purchased Creator subscriptions on OnlyFans in reliance on

21    uniform representations that the subscription would provide full access to exclusive content, and were

22    subjected to the same undisclosed secondary paywalls and access restrictions, suffering the same type

23    of economic injury as the class members.

24         **46.**    <u>Adequacy:</u> Plaintiff will fairly and adequately protect the interests of the class

25    members. Plaintiff is an adequate representative of the classes and has no interests adverse to, or in

26    conflict with, the classes he seeks to represent. Plaintiff has retained counsel with substantial

27    experience and success in complex civil litigation and class actions.

28

47.     This action is also appropriate as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because OnlyFans has acted on grounds generally applicable to the classes by uniformly representing that creator subscriptions provide "full access" while continuing to impose undisclosed secondary paywalls through platform-wide policies and design, and plaintiff and class members wish to continue using OnlyFans but will otherwise remain subject to the same deceptive practices absent declaratory and injunctive relief requiring truthful disclosures and prohibiting those practices on a classwide basis.

48.     Adequate notice can be given to class members directly using information maintained by OnlyFans.

## First Cause of Action

### Breach of Contract (Nationwide Class)

49.     Plaintiff incorporates by reference all preceding allegations.

50.     When plaintiff and class members purchased Creator subscriptions, they entered into contracts with OnlyFans under which OnlyFans itself expressly promised that the subscription payment would provide "full access" to the Creator's content. OnlyFans—not any Creator—makes that promise. OnlyFans's "full access" representation is a binding term of a standalone contract that arises when the Fan completes the transaction and remits the monthly subscription fee. The representation is an unequivocal component of OnlyFans's "offer" to provide access to a particular profile for a particular price, which a Fan accepts by clicking a box to remit payment that is directly adjacent to OnlyFans's representations. OnlyFans collects the consideration for its promise, exercises total control over the platform and how its Creators may post and distribute content, and it is responsible for the performance of its promise. OnlyFans's background, adhesive Terms of Service do not memorialize these one-off subscription transactions, nor do they contain terms that contradict OnlyFans's representation at the time of contract formation that the subscription provides "full access."

51.     Plaintiff and class members performed their contractual obligations by paying the required subscription fees.

52.     OnlyFans breached its contracts with plaintiff and class members by failing to provide full access to Creator content.

53.     Additionally, OnlyFans breached the implied covenant of good faith and fair dealing inherent to its uniform "full access" contractual term. This covenant is implied by law, and prohibits OnlyFans from defeating Fans' reasonable expectations under the contracts. OnlyFans breached the implied covenant by promising "full access" to Creators' exclusive content while knowing that the subscription payment would not, in fact, provide full access to the exclusive content that Fans reasonably expected the subscription to include, and while instead knowingly facilitating, encouraging, and monitoring Creators' withholding of the expected content from their pages in favor of distributing it as purported "individualized" content for additional money through DM-based transactions. OnlyFans's promise to provide "full access" was not entered or performed in good faith or with fair dealing to plaintiff and class members, and OnlyFans frustrated the contracts' basic purpose and deprived plaintiff and class members of the benefits of their bargains.

54.     As a direct and proximate result of OnlyFans's breaches, plaintiff and class members suffered damages in the form of subscription fees paid for full access that was never provided.

## Second Cause of Action

### Violation of California Bus. & Prof. Code § 17200 *et seq.* (California Subclass)

55.     Plaintiff incorporates by reference all preceding paragraphs.

56.     OnlyFans engaged in unlawful, deceptive, and unfair business acts and practices by representing that its Creator subscriptions provide "full access" to Creator content to induce consumers to pay and use the platform while knowing, or at least constructively knowing, that its representations were false.

57.     OnlyFans's conduct is unlawful because it violates California's Consumers Legal Remedies Act, Civil Code § 1770(a), the False Advertising Law, Bus. & Prof. Code § 17500, principles of California contract law, including the duty not to misrepresent the nature of the consideration exchanged, and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits unfair or deceptive acts or practices in commerce. Indeed, OnlyFans's conduct constitutes a classic case of systematic bait-and-switch advertising and pricing. *E.g.*, 16 C.F.R. 238, *et seq.*

58.     OnlyFans's misrepresentations and omissions were fraudulent, were likely to deceive reasonable consumers and were material to plaintiff's and class members' subscription purchases, and caused plaintiff and class members injuries in fact by causing them to lose money in the form of payments for subscriptions that they otherwise would not have purchased, or would have only paid less for.

59.     OnlyFans's conduct is also unfair because it causes substantial consumer injury that is not outweighed by countervailing benefits, that violates public policy embodied in California consumer-protection statutes and contract law, and that enables OnlyFans to extract unjust profits through deceptive representations about the benefits of its subscription fees.

60.     Plaintiff is entitled to restitution, injunctive relief, and all other relief available under the UCL to enjoin OnlyFans's unlawful practices and restore money wrongfully obtained from plaintiff and the class members.

### Third Cause of Action

### Violation of California Civ. Code § 1750 *et seq.* (California Subclass)

61.     Plaintiff incorporates by reference all preceding paragraphs.

62.     OnlyFans's subscriptions constitute "services" purchased for personal, family, or household use within the meaning of the CLRA. OnlyFans's representations about its subscriptions were made in connection with a transaction intended to result in the sale of services.

63.     OnlyFans violated the CLRA, including Civil Code §§ 1770(a)(5), (a)(7), (a)(9), and/or (a)(29), by misrepresenting that Creator subscriptions provide "full access" to the Creator's content.

64.     OnlyFans's misrepresentations and omissions were material, likely to deceive reasonable consumers, and were relied upon by plaintiff and class members in deciding to purchase subscriptions.

65.     Plaintiff provided more than 30 days of pre-suit notice to OnlyFans and received no response.

66.     As a result of OnlyFans's CLRA violations, plaintiff and class members suffered damages and are entitled to injunctive relief, restitution, and all other relief available under the CLRA.

1                     **<u>Prayer for Relief</u>**

2       Plaintiff, individually and on behalf of all other members of the class, respectfully request that

3 the Court enter judgment in their favor and against OnlyFans as follows:

4         **A.**     An order certifying this action as a class action pursuant to Rule 23 of the

5               Federal Rules of Civil Procedure, appointing plaintiff as Class Representative,

6               and appointing plaintiff's counsel as Class Counsel;

7         **B.**     A declaration that OnlyFans's conduct, policies, and practices described herein

8               violate California law, including the Unfair Competition Law, the Consumers

9               Legal Remedies Act, and applicable contract law;

10        **C.**     An order, for the benefit of plaintiff, class members, and the California public,

11              permanently enjoining OnlyFans from continuing the unlawful, deceptive, and

12              unfair business practices alleged in this Complaint;

13        **D.**     An order requiring OnlyFans to provide restitution and disgorgement of all

14              monies wrongfully obtained from plaintiff and class members as a result of its

15              alleged unlawful, unfair, and deceptive practices;

16        **E.**     An award of all available compensatory damages to plaintiff and class

17              members in an amount to be determined at trial;

18        **F.**     An award of statutory damages, punitive damages, and/or enhanced damages

19              to the extent authorized by law;

20        **G.**     An award of reasonable attorneys' fees, costs, and expenses as permitted

21              by law;

22        **H.**     Pre-judgment and post-judgment interest as allowed by law; and

23        **I.**     Such other and further relief as the Court deems just and proper.

24                    **<u>Demand for Jury Trial</u>**

25      Plaintiff demands a trial by jury on all issues so triable.

26

27

28

CLASS ACTION COMPLAINT

Dated:  January 23, 2026

Respectfully Submitted,

/s/ *Carter E. Greenbaum*

**GREENBAUM OLBRANTZ LLP**
Carter E. Greenbaum (SBN 344692)
160 Newport Center Drive, Suite 110
Newport Beach, CA 92660
(332) 222-9119
carter@greenbaumolbrantz.com

**GREENBAUM OLBRANTZ LLP**
Casey Olbrantz (*pro hac vice forthcoming*)
Giorgio Traini (*pro hac vice forthcoming*)
244 Fifth Avenue, Suite C221
New York, NY 10001
(332) 222-9119
casey@greenbaumolbrantz.com
giorgio@greenbaumolbrantz.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT